Daniel E. RYAN, Administrator of the
Estate of Marvin George
Ellsworth Mousseau

v.

NEW BEDFORD CORDAGE COMPANY
et al. (two cases).

VERMONT CONSTRUCTION
COMPANY, INC.

v.

GEORGE & ASMUSSEN, LTD.
(two cases).

Civ. A. Nos. 73–240, 74–99.

United States District Court,
D. Vermont.

Sept. 30, 1976.

Edward J. Tyler, III, Tyler & Bruce, St. Albans, Vt. (Louis E. Wolfe, O'Connell & Wolfe, Plattsburgh, N.Y., of counsel), for plaintiffs.

Robert H. Erdmann, Dinse Allen & Erdmann, Burlington, Vt., for defendant New Bedford Cordage Co.

Richard W. Affolter, Pierson, Affolter & Amidon, Burlington, Vt., for defendant Reynolds & Son, Inc.

Lawrence Miller, Miller & Norton, Rutland, Vt., for defendant Vermont Construction Co., Inc.

Alden T. Bryan, Hoff, Curtis, Bryan, Quinn & Jenkins, Burlington, Vt., for defendant George & Asmussen, Ltd.

## MEMORANDUM AND ORDER

HOLDEN, Chief Judge.

These companion cases arose out of an accident which occurred on a construction site in St. Johnsbury, Vermont on September 30, 1971. Marvin Mousseau and Alvin Martin, both employees of Johnson Industrial Painting Contractors, were working on a scaffold suspended on the exterior of an unfinished building when the Manila rope supporting the platform broke, causing both men to fall to the ground. As a result of the fall, Mousseau was killed and Martin was injured. Workmen's Compensation benefits were recovered from the employer Johnson. Daniel Ryan, Mousseau's administrator, and Martin brought suit against the New Bedford Cordage Company, which manufactured the Manila rope, Reynolds & Son, Inc., the retailer from which it was purchased, and Vermont Construction Company, Inc., the general contractor on the construction project, for which Johnson was a subcontractor.

Defendant Vermont Construction brought a third party action against the employer Johnson, which was dismissed by the court on September 19, 1974. A second third party action by Vermont Construction and a claim by the plaintiffs against George & Asmussen, Ltd., a masonry subcontractor on the project, were voluntarily dismissed by these parties during the course of the trial.

After seven days of trial in these consolidated cases the jury returned special and general verdicts for the plaintiff Ryan, finding the defendant Vermont Construction liable in negligence for the wrongful death of Marvin Mousseau in the amount of $189,800 in Civ. No. 73–240. In the companion case of Alvin E. Martin against the same defendants, Civ. No. 74–99, the jury, by way of special interrogatories and a general verdict, found the defendant Vermont Construction liable in negligence in the amount of $32,500. In both cases the jury found the defendants New Bedford Cordage and Reynolds & Son not liable to the plaintiffs on their products liability claims.

At 9:25 in the evening, after approximately nine hours of deliberation, the jury reported they had reached a verdict. By answer to special interrogatories, the jury found the defendant Vermont Construction's negligence was, to the extent of 65%, a proximate cause of the accident which caused Mousseau's death. The decedent's contributory negligence was found to have been 35% of the total negligence. Under the Vermont comparative negligence statute, 12 V.S.A. § 1036, these findings rendered Vermont Construction liable for 65% of the plaintiff's total damage which was found to be $292,000.

In the companion case of Martin, the jury found the plaintiff was guilty of contributory negligence to the extent of 35%, compared to Vermont Construction's negligence of 65%. The jury correctly applied this ratio to Martin's total damage of $50,000 and returned a general verdict of $32,500 for this plaintiff. To this extent, the general verdicts were consistent with the underlying answers to the special interrogatories and with the evidence supporting the claims against Vermont Construction.

The jury also returned general verdicts on the products liability claims of each plaintiff against New Bedford Cordage and Reynolds & Son in the amount of $25,000.

The court recognized that these general verdicts were inconsistent with the court's instructions and declined to accept all verdicts, including the special interrogatories and general verdicts against Vermont Construction. Supplementary instructions were given, explaining why all the verdicts as first returned were unacceptable. The court inquired of the jury if they understood the additional instructions and the foreman answered in the affirmative. The court went on to caution the jury to inquire of the court if they had further problems and not to hesitate to request suspension of their deliberations until the next day if they were overtired. The jury gave no indication that they wished to interrupt their deliberations. Thirty minutes later the jury returned without changing the original special and general verdicts for the plaintiffs against Vermont Construction in both cases. The plaintiffs' verdicts, as initially returned for the plaintiffs against New Bedford and Reynolds & Son, were amended to general verdicts for both defendants in each case. All verdicts were received after being confirmed on the court's verbatim reading back of each verdict to the jury. The court's invitation to a poll of the jury was declined.

After judgments were entered according to the several verdicts, the defendant Vermont Construction moved for judgment notwithstanding the verdicts, for a new trial and that the verdicts in both cases be reduced by the amount of workmen's compensation benefits paid to both plaintiffs by the carriers for their employer, Johnson Industrial Painting Contractors. This defendant also moved to vacate the court's pretrial order dismissing its third party complaint against Johnson Industrial Painting Contractors.

■■■ The plaintiffs moved for judgment against all defendants on the ground that the jury had originally returned general verdicts against all defendants albeit the damages were incorrectly assessed on the products liability claims.

The court is satisfied that the verdicts which were finally received are fully sup-

ported by the evidence and consistent with the court's instructions. There is no indication of compromise or confusion on the part of the jury in their deliberation. All of the post trial motions are denied, including the request of Vermont Construction for the court to vacate its order dismissing the third party action against Johnson.

The evidence at the trial firmly establishes that the general contractor, Vermont Construction, and the subcontractor, Johnson, were both at fault in the tragic accident that occurred on the construction site. Both actors were actively negligent in their failure to exercise reasonable care for the safety of Mousseau and Martin. In the court's judgment, they stand as joint tortfeasors.

Again, Vermont Construction has failed to advance any express agreement on the part of the third party defendant to indemnify the general contractor, although the subcontract was prepared and submitted by Vermont Construction. To its Memorandum and Order of September 19, 1974, the court will merely add a reference to *New England Telephone and Telegraph Co. v. Central Vermont Public Service Corp.*, 391 F.Supp. 420 (D.Vt.1975).

■■■ Judge Oakes's opinion in that case restates the law of Vermont to the effect that one active, or primarily liable, tortfeasor may not be indemnified by another except by an express indemnification provision in a contract. *Id.* at 426. Compare *Digregorio v. Champlain Valley Fruit Co.*, 127 Vt. 562, 255 A.2d 183 (1969). The rule against indemnification would predictably incline the Supreme Court of Vermont against reducing the injured workman's recovery by the amount of compensation he has received from his employer. The Supreme Court of Vermont has said in *Dubie v. Cass-Warner Corp.*, 125 Vt. 476, 478, 218 A.2d 694, 696 (1966):

Receipt of statutory compensation has no relevance with respect to the employee's right to sue the tort-feasor. The wrongdoer is not entitled to credit for compensation payments, from outside sources, against the damages he brought about.

*See also New England Telephone, supra,* 391 F.Supp. at 428.

In its present motion for judgment the defendant renews the contention advanced in its motion for a directed verdict to the effect that Vermont Construction is the statutory employer of both plaintiffs as defined in the Vermont Workmen's Compensation Law, 21 V.S.A. § 601(3):

"Employer" includes any body of persons, corporate or unincorporated, public or private, and the legal representative of a deceased employer, and includes the owner or lessee of premises or other person who is virtually the proprietor or operator of the business there carried on, but who, by reason of there being an independent contractor or for any other reason, is not the direct employer of the workmen there employed. If the employer is insured, "employer" includes his insurer so far as applicable.

As the general contractor, Vermont Construction maintains it comes within the definition, and as a statutory employer, it is entitled to immunity from common law lia-

bility by force of 21 V.S.A. § 622, which provides:

The rights and remedies granted by the provisions of this chapter to an employee on account of a personal injury for which he is entitled to compensation under the provisions of this chapter shall exclude all other rights and remedies of such employee, his personal representatives, dependents or next of kin, at common law or otherwise on account of such injury.

■ The present action is founded on the provisions of 21 V.S.A. § 624, as amended by No. 232 of the Public Acts of 1959. The 1959 amendment restored common law liability in favor of an injured employee when caused under circumstances where legal liability resides in a stranger to the contract of employment, even though the workman may have received compensation under the Workmen's Compensation Act. *Herbert v. Layman,* 125 Vt. 481, 483, 218 A.2d 706 (1966).[1]

■ There is no dispute in the record that Mousseau and Martin were the em-

---

1. § 624. Dual liability; claims, settlement procedure

Where the injury for which compensation is payable under the provisions of this chapter was caused under circumstances creating a legal liability in some person other than the employer to pay damages in respect thereof, the acceptance of compensation benefits or the taking of proceedings to enforce compensation payments shall not act as an election of remedies, but the injured employee or his personal representative may also proceed to enforce the liability of such third party for damages in accordance with the provisions of this section. If the injured employee or his personal representative does not commence the action within one year after the occurrence of the personal injury, then the employer or its compensation insurance carrier may, within the period of time for the commencement of actions prescribed by statute, enforce the liability of the third party in the name of the injured employee or his personal representative. Not less than thirty days before the commencement of suit by any party under this section, the party shall notify, by registered mail at their last known address, the commissioner of industrial relations, the injured employee, or in the event of his death, his known dependents, or personal representative or his known next of kin, his employer and the workmen's compensation

insurance carrier. Any party in interest shall have a right to join in the suit but the direction and control of said suit shall be with the injured plaintiff.

Prior to entry of judgment, either the employer or his insurance carrier or the employee or his personal representative may settle their claims as their interest shall appear and may execute releases therefor, but the consent of the employer, or, if insured, his insurance carrier, shall be required, if the amount of the settlement by the employee or his personal representative is less than the compensation benefits which would have been payable in the future but for the provisions of this section.

The settlement and release by the employee shall not be a bar to action by the employer or its compensation insurance carrier to proceed against the third party for any interest or claim it might have.

In the event the injured employee or his personal representative shall settle their claim for injury or death, or commence proceedings thereon against the third party before the payment of workmen's compensation, the recovery or commencement of proceedings shall not act as an election of remedies and any moneys so recovered shall be applied as herein provided.

In an action to enforce the liability of a third party, the plaintiff may recover any

ployees of Johnson, an independent subcontractor of the defendant Vermont Construction. The defendant could not be held liable to the plaintiffs under the Vermont Workmen's Compensation Act in the absence of a contract of hire between the defendant and the injured workmen. *Mercier v. Holmes,* 119 Vt. 368, 373, 125 A.2d 790 (1956). To be sure, the injured employees might have resorted to Vermont Construction under the statutory definition of "employer" had their immediate employer Johnson failed to provide adequate protection, or had the defendant's subcontract with Johnson been a scheme to evade liability under the Act. *See Blake v. American Fork & Hoe Co.,* 99 Vt. 301, 304, 131 A. 844 (1926); *cf. O'Boyle v. Parker-Young Co.,* 95 Vt. 58, 61–62, 112 A. 385 (1921). It affirmatively appears in the record that Johnson has undertaken and discharged its obligations to the plaintiffs under the Workmen's Compensation Law. This was in keeping with the employer's subcontract with the defendant which called upon the subcontractor to "maintain full Workmen's Compensation coverage and insurance."

■ The liability of Vermont Construction, the general contractor, to the employees of the subcontractor Johnson is conditional, imposed by law, in the event the subcontractor fails to secure compensation as required by 21 V.S.A. § 687.[2] Such contingent liability does not establish the relationship of employer and employee between the workmen here involved and the defendant to shield it from liability under the exclusivity provisions of 21 V.S.A. § 622. *See Sweezey v. Arc Electrical Construction Co.,* 295 N.Y. 306, 67 N.E.2d 369, 166 A.L.R. 809 (1946); *Clark v. Monarch Engineering Co.,* 248 N.Y. 107, 161 N.E. 436, 438 (1928); *see also Kirby v. Union Carbide Corp.,* 373 F.2d 590 (4th Cir. 1967); *Thomas v. Farnsworth Chambers Co.,* 286 F.2d 270, 273 (10th Cir. 1960); 81 Am.Jur.2d Workmen's Compensation § 59 (1976).[3] While the Supreme

amount which the employee or his personal representative would be entitled to recover in an action in tort. Any recovery against the third party for damages resulting from personal injuries or death only, after deducting expenses of recovery, shall first reimburse the employer or its workmen's compensation insurance carrier for any amounts paid or payable under this chapter to date of recovery, and the balance shall forthwith be paid to the employee or his dependents or personal representative and shall be treated as an advance payment by the employer on account of any future payment of compensation benefits.

Expenses of recovery shall be the reasonable expenditures, including attorney fees, incurred in effecting the recovery. Attorney fees, unless otherwise agreed upon, shall be divided among the attorneys for the plaintiff as directed by the court. The expenses of recovery above mentioned shall be apportioned by the court between the parties as their interests appear at the time of the recovery.

Compensation benefits referred to in this section shall in each instance include but not be limited to all expenses incurred under sections 639 and 640 of this title.—Amended 1959, No. 232.

2. Of course, once liability is found to exist on the part of two or more statutory employers, as defined by 21 V.S.A. § 601(3), there is no primary or secondary liability as between those "employers"; all would be primarily liable.

*Morrisseau v. Legac,* 123 Vt. 70, 78, 181 A.2d 53 (1962). Such a situation frequently arises with respect to employers and their insurance carriers, since the latter are included within the statutory definition of "employer." *See De-Gray v. Miller Bros. Construction Co.,* 106 Vt. 259, 279, 173 A. 556 (1934) (insurer held primarily liable to injured employee of insured).

3. In *Thomas v. Farnsworth Chambers Co.,* 286 F.2d 270, 273 (10th Cir. 1960), Chief Judge Murrah's opinion dealt with a similar claim of immunity as a statutory employer advanced by a general contractor under the Oklahoma Workmen's Compensation statute; the reasoning is persuasive:

We know of course that the basic purpose of the so called "statutory employer" provisions in the workmen's compensation acts is to vouchsafe the benefits of the act to all employees coming within their definitive provisions and to that end to prevent evasive action by all those who are engaged in a business or enterprise coming within their coverage. An equally basic purpose of the act is to make the remedies provided under the act exclusive and to insulate the employer, liable under the act, from any other liability whatsoever. Once however, this legislative objective is fully accomplished there seems no good reason for the further curtailment of the common law remedy. Indeed we see no statutory reason for not saying that the immunity from common law liability

Court of Vermont has not specifically addressed the question, it seems quite clear that it would hold the present actions are within the legislative purpose of 21 V.S.A. § 624—to restore the injured workman's common law remedies against third party wrongdoers. *See Dubie v. Cass-Warner Corp., supra,* 125 Vt. at 479, 218 A.2d 694. To the extent that the exclusivity provisions of 21 V.S.A. § 622 are inconsistent with the amended provisions of § 624, the 1959 enactment must prevail. *Troy Conference Academy v. Town of Poultney,* 115 Vt. 480, 66 A.2d 2 (1949).

The respective motions of the parties for judgment notwithstanding the jury's verdicts, to reduce the verdicts and for new trials are denied.

Since the plaintiffs Ryan and Martin and the defendant Vermont Construction stipulated in the record to voluntary dismissal of the claim in the main action and in the third party suit against George & Asmussen, Ltd., these actions are dismissed.

It is so ORDERED.

granted by the act should be coexistent with the factum of statutory liability. Of course it is within the legislative province to grant immunity from common law liability in return for vicarious statutory liability and the extent of the legislative intent is of course to be discerned from the particular language used in the enactments. But we ought not attribute to the legislature an intent to curtail the common law remedy unless such intent is manifest. And this is especially true where as here, we are but forecasters of what the state court may say about its state enactment.